**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Gann, et al., | No. CV-22-00080-TUC-RM (EJM) |
| Plaintiffs, | **ORDER** |
| v. | |
| General Motors LLC, | |
| Defendant. | |

Pending before the Court is Defendant's Motion for a Protective Order (Doc. 32) and Plaintiffs' Memorandum in opposition. (Doc. 33). For the reasons explained below, the Court will grant Defendant's motion and enter a Protective Order.

**I.      Factual and Procedural Background**

Plaintiffs filed this action on February 16, 2022 (Doc. 1) and filed their first amended complaint on April 5, 2022 (Doc. 20). Pursuant to 28 U.S.C. § 636(b)(1) and the local rules of practice of this Court, this matter was assigned to the Honorable Rosemary Márquez and referred to the undersigned for all pretrial proceedings and report and recommendation. (Doc. 18).

Plaintiffs are the parents of three minor boys who died during a school field trip while riding in a 2005 GMC Savanna 15-passenger van. (Doc. 25 at 2). The van drifted across traffic lanes and exited the road, and when the driver attempted to steer the van back onto the roadway, the van rolled. *Id.* at 2–3; Doc. 20 at 7. The deceased were not wearing seatbelts at the time of the accident and were ejected from the van and suffered fatal

injuries. (Doc. 20 at 7–8; Doc. 25 at 2–3). Plaintiffs contend that the subject van and others similar to it "are among the most dangerous vehicles on American roadways." (Doc. 25 at 2). Specifically, Plaintiffs allege that:

> [T]his van was inherently dangerous and defective due to its highly elevated propensity to roll over. Beyond its inherently dangerous design, Plaintiffs allege that the vehicle was defective and unreasonably dangerous due to General Motors' failure to install features which would have mitigated the risk of rollovers, including: (1) dual rear wheels, (2) driver monitoring systems, (3) lane departure warning systems, and (4) lane keeping systems. In addition, the vehicle was defective and unreasonably dangerous due to General Motors' failure to install injury occupant restraint features in the van, including laminated side and rear window glass, side rollover curtain airbags with rollover sensing, seat belt status monitoring, unbuckled seat belt warnings and notices to drivers of passengers' unbelted status.

*Id.* at 2–3. Plaintiffs state three claims against Defendant for strict liability—design defect, negligence, and wrongful death. (Doc. 20).

On June 29, 2022 Defendant filed a Motion for Protective Order seeking to protect "confidential engineering, design, development, testing, trade secrets and other sensitive, confidential business and commercial information ("Confidential Documents")." (Doc. 32 at 1). Defendant requests that the Court enter its proposed protective order, or, in the alternative, that the Court enter its own standing protective order. Defendant states, however, that it believes its proposed order is actually less burdensome on the parties and the Court. Plaintiffs contend that Defendant's request for a "blanket" protective order unfairly circumvents the requirements of Fed. R. Civ. P. 26(c) by allowing Defendant to claim broad categories of documents are confidential without making a particularized showing of good cause as to any individual document. (Doc. 33).[1]

---

[1] See *Bayer AG & Miles, Inc. v. Barr Lab'ys, Inc.*, 162 F.R.D. 456, 465 (S.D.N.Y. 1995), explaining that "there are essentially three types of protective orders in terms of the amount of information covered[:]"

> The narrowest is a protective order covering specific, identified information. . . . With a narrow protective order the court usually reviews the protected material, so it is clear that "good cause" existed for the protective order.

> At the other extreme is an "umbrella" protective order that designates all discovery as protected, without any review or

## II.     Motion for Protective Order

### A. Law

Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[u]nless otherwise limited by court order, . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." As the Supreme Court has recognized, the liberality of pretrial discovery permitted by the rules necessitates that the trial court also have the authority to issue protective orders limiting discovery, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984), and "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). In particular, "[a]lthough [Rule 26] contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule." *Seattle Times*, 467 U.S. at 35 n.21. Thus, while "the public can [generally] gain access to litigation documents and information produced during discovery," the court may limit such disclosure upon a showing of "good cause" that a protective order is necessary. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002); *see also San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999) ("It is well-established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public.").

Specifically as it applies to the present case, Rule 26(c) authorizes the Court to protect parties from "undue burden or expense" in discovery by ordering "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]" Such "[p]rotective orders and filings under seal are the primary means by which the courts ensure full disclosure of relevant information, while still preserving the parties' (and third parties') legitimate expectation that confidential business information, proprietary technology and trade secrets will not be publicly

_____

determination of "good cause" by the parties or court. . . .

Between those two extremes is a "blanket" protective order that permits the parties to protect documents that they in good faith believe contain trade secrets or other confidential commercial information.

disseminated." *In re Adobe Sys., Inc. Sec. Litig.*, 141 F.R.D. 155, 161–62 (N.D. Cal. 1992). However, "there is no absolute privilege for trade secrets and similar confidential information." *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979) (quoting 8 C. Wright & A. Miller, Federal Practice and Procedure § 2043, p. 300 (1970)).

"For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips*, 307 F.3d at 1210–1211. "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986)). Rather, "[a] party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). "Furthermore, when a party asserts that the discovery process will cause competitive injury because it will result in the revelation of trade secrets, the party cannot rely solely upon conclusory statements, but must present evidence of specific damage likely to result from disclosure." *BASF Corp. v. United States*, 28 Ct. Int'l Trade 414, 321 F. Supp. 2d 1373, 1378 (2004) (internal quotations and citations omitted).

"If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." *Phillips*, 307 F.3d at 1211; *see also Fed. Open Mkt.*, 443 U.S. at 362 (court must weigh claim to privacy against the need for disclosure). Finally, "even when the factors in this two-part test weigh in favor of protecting the discovery material . . . a court must still consider whether redacting portions of the discovery material will nevertheless allow disclosure." *In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 425 (9th Cir. 2011).

B. Parties' Arguments

Defendant argues that a protective order is necessary in this case due to the

"significant volume" of documents that contain confidential information. Defendant states that the documents detail its confidential design and development methodologies, disclosure of which could detrimentally harm and competitively disadvantage GM. Defendant further states that the contents of the documents are not publicly known, not generally known in the automotive manufacturing business outside of GM, and not readily ascertainable or derivable from publicly available information; rather, the documents are kept confidential even within GM and are only made available to specific employees.

Defendant avers that the parties attempted to negotiate a stipulated protective order, but that Plaintiffs ultimately changed their minds because of the age of the subject vehicle and because courts allegedly frown on orders like the one Defendant proposed. Defendant contends that Plaintiffs wrongly characterize its proposed order as "blanket" when in fact it is actually tailored to address specific categories of documents and how those documents should be handled in various scenarios that are likely to arise during the litigation of this matter. Defendant further states that its proposed order follows sample orders used by this Court and others, that such orders are common in suits of this nature, and that Plaintiffs have not and cannot show that they would be burdened in any way, whereas GM would suffer considerable harm without the order.

Plaintiffs contend that a blanket protective order is unwarranted for a vehicle that was designed, developed, and tested in the early 1990s, and that there is no reason to deviate from the standard rules requiring Defendant to make a showing of particularized harm for each document it wants to protect. Plaintiffs further contend that even if the Court finds Defendant has met its burden, entry of a protective order would be against public policy because of the safety history of 15-passenger vans, which are used by schools, churches, and other groups. Finally, Plaintiffs argue that the portion of Defendant's proposed order requiring that the parties seek leave to file under seal any confidential documents that will be used in a court filing goes against the case law and federal rules.

C. Analysis

Rule 26(c) "confers broad discretion on the trial court to decide when a protective

- 5 -

order is appropriate and what degree of protection is required." *Seattle Times*, 467 U.S. at 36. While the Court recognizes that blanket protective orders may be disfavored "because the party resisting disclosure has not made a particularized showing of good cause with respect to an individual document[,]" *Trew v. Volvo Cars of N. Am., LLC*, 2006 WL 8458828, at *2 (E.D. Cal. Jan. 12, 2006), the Court also recognizes that it may be impractical in some cases to require the party seeking protection to identify each individual document. On this point, the Court finds the Middle District of North Carolina's reasoning instructive:

> Blanket or umbrella protective orders are becoming increasingly common as large scale litigation involves more massive document exchanges. Such protective orders may be entered even without stipulation by the parties, so long as certain conditions are met. First, a party must make some threshold showing of good cause to believe that discovery will involve confidential or protected information. This may be done on a generalized as opposed to a document-by-document basis. Moreover, even though a blanket protective order permits all documents to be designated as confidential, a party must agree to only invoke the designation in good faith. After receiving documents, the opposing party has the right to contest those documents which it believes not to be confidential. At this stage, the party seeking the protection shoulders the burden of proof in justifying retaining the confidentiality designation. Thus, the burden of proving confidentiality never shifts from the party asserting that claim—only the burden of raising that issue.

*Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Grp., Inc.*, 121 F.R.D. 264, 267–68 (M.D. N.C. 1988); *see also Bayer*, 162 F.R.D. at 465 (explaining that blanket orders are routinely agreed to by parties and approved by courts in commercial litigation, and such orders "are essential to the functioning of civil discovery"). Here, Defendant does not seek an "umbrella" order that would treat "*all* information produced in connection with the discovery process as confidential." *Foltz*, 331 F.3d at 1138 (emphasis added). Rather, Defendant seeks to protect documents falling within specific document topics pertaining to the subject vehicle. *See* Doc. 33 at 3. And, Defendant's proposed order contains a provision allowing Plaintiffs to contest the confidentiality designation of any document and seek a determination by the Court as to whether protection is warranted. (Doc. 32-4 at

8); *see Strough v. Gen. Motors LLC*, 2019 WL 2357306, at *3 (D. Colo. June 4, 2019) (in granting motion for protective order, court noted that while the order "provides a mechanism for the production of documents that the Defendants believe should be protected from public dissemination . . . [t]he burden of proving that a Protected Document contains confidential information is on the party claiming such protection . . . . If the Plaintiff disagrees with the confidential designation of *any document*, she can notify the Defendant, and the Court will set a hearing for the purpose of establishing whether the disputed document is confidential." (internal quotations omitted)); *see also Deford v. Schmid Prod. Co., a Div. of Schmid Lab'ys*, 120 F.R.D. 648, 654 (D. Md. 1987) (court stated it was "not disapproving the general practice in complex cases of entering an umbrella protective order at the beginning of the discovery process" but that any such order "must preserve the plaintiffs' right to challenge the designations of individual documents and require the defendant to meet its burden of showing good cause for continued protection").

The Court finds that Defendant has met its burden under Rule 26(c) to show good cause to keep the documents confidential. Defendant does more than declare generally that documents sought by Plaintiffs might reveal confidential information that could cause it harm. Rather, Defendant attaches a declaration in support of its motion that goes into considerable detail explaining what the confidential business and engineering information is and why it is so important to GM, the steps GM takes to ensure that this information is kept confidential even within GM, and how disclosure of the information would expose GM to harm if not protected. *See* Doc. 32 Ex. C. The declaration covers three categories of confidential documents: design, development, and assembly information; safety and engineering testing, evaluation, reports, and considerations; and meeting minutes, memoranda, and internal communications. The declaration then further describes types of confidential information within each category and how access to the information would give a competitor significant, unfair competitive advantage. Defendant avers that the documents "cannot be examined in a vacuum" because while each confidential document

contains at least some degree of proprietary and confidential information, "it is also the cumulative information learned from all the documents taken together and in context from one document to the next that truly reveals the proprietary, confidential, commercially sensitive, breakthrough proprietary designs that end up yielding significant value and economic benefit to GM LLC." *Id.* Ex. C at 9.

While Plaintiffs make a general argument that there is no cause to enter a blanket order for documents pertaining to a vehicle that was designed at least 20 years ago,[2] Defendant asserts that despite the age of some of the documents, they "display unique engineering methodologies and practices, as well as ongoing research, development, and testing procedures that are still in use today." (Doc. 32 at 5). Defendant's declaration further explains how these historical documents remain part of GM's trade secret and confidential information and continue to be utilized in the development of GM's products. *See id.* Ex. C. Defendant states that "[s]imply because a specific vehicle model/model year, such as the 2005 GMC Savana, is no longer being sold as a new vehicle, does not dilute the confidential status of the documents that were created and the underlying methodologies used in the design, development, and manufacturing of that vehicle and its component parts." *Id.* Ex. C at 4. Thus, disclosure of Defendant's "confidential documents, *including those that may be characterized as historical*, [would] provide a roadmap and technical pathway to engineer what would otherwise not be available in the absence of considerable investment by competitors." *Id.* Ex. C at 5. In light of Defendant's explanation as to why there is good cause to protect the historical documents at issue here, and with no evidence from Plaintiffs to the contrary, the Court rejects Plaintiffs' conclusory allegation that the age of the subject vehicle renders documents pertaining to it unworthy of protection. *See Strough*, 2019 WL 2357306 at *3 (rejecting plaintiff's argument that because vehicle was a 2004 model, there were "no protectable trade secrets or confidential information that would merit protection . . . given that any technology embodied in the car

---

[2] Plaintiffs cite *Parsons v. Gen. Motors Corp.*, 85 F.R.D. 724, 726 (N.D. Ga. 1980), where the court denied GM's motion for protective order in part because GM's affidavits did not show that information in historical documents was still confidential.

would likely be outdated by this point"; court reasoned that defendant submitted affidavit explaining highly competitive nature of the business and made a persuasive argument that, given the breadth of plaintiff's discovery requests, the disclosure of the information requested would severely and unfairly reduce defendant's competitive advantage in the market); *see also Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 416 (M.D. N.C. 1991) (court found that the age of the documents diminished, but did not entirely eliminate, the need to keep them confidential).

Having found that disclosure of the confidential information would likely result in harm to Defendant, the Court must balance the public and private interests to determine whether a protective order is necessary. *Phillips*, 307 F.3d at 1210–1211. The factors the Court considers are:

> (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

*Roman Catholic Archbishop*, 661 F.3d at 424 n.5 (citing *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)).

First, disclosure of the confidential documents will violate Defendant's interests in its private trade secret and other confidential business and commercial information. Second, Plaintiffs properly seek disclosure of the documents pursuant to the discovery rules for use in this litigation. Third, to the extent that there is any "smoking gun" evidence of Defendant's fault in this action, disclosure of the documents could cause GM public embarrassment and a decline in sales. Fourth, at least some portion of the documents will contain information important to public safety relating to the crash data and safety features of the GMC Savana. Fifth, the documents will be shared by the named plaintiffs in this suit. While sharing the information among other litigants in other similar suits would

promote fairness and efficiency, Plaintiffs make no argument that the discovery sought is needed for this purpose.[3] Sixth, none of the parties to this action are public entities or officials. Finally, because Plaintiffs allege that the subject vehicle and others like it are inherently dangerous and defective due to propensity to roll over, this case involves issues important to the public.

Plaintiffs focus on this issue of public safety and contend that Defendant's proposed protective order is against public policy because of "the unfortunate safety history of 15-passenger vans" and their use throughout the country to transport "students, church groups, the elderly, and the mentally ill." (Doc. 33 at 5). However, the right of public access to court documents is not unfettered. While courts "recognize a general right to inspect and copy public records and documents, including judicial records and documents[,]" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016), "[p]retrial depositions, interrogatory answers, and document production are generally not considered part of the civil trial itself." *Nault's Auto. Sales, Inc. v. Am. Honda Motor Co., Acura Auto. Div.*, 148 F.R.D. 25, 44 (D. N.H. 1993) (citing *Seattle Times*, 467 U.S. at 33). "Because those proceedings by tradition are not open to the public, and were not open at common law, dissemination restraints on those materials do not necessarily amount to restrictions on traditionally public sources of information[, and] . . . the public has no right to demand access to discovery materials which are solely in the hands of private party litigants." *Id.* (citation omitted); *Ctr. for Auto Safety*, 809 F.3d at 1097 ("[t]here is no tradition of public access to discovery" (citation omitted)); *see also Adobe Sys.*, 141 F.R.D. at 165 ("There is at best a weak presumption of public right of access to information produced by parties or

---

[3] As the court stated in *Strough*,

> The Court's objective is to get this case ready for trial promptly. Delays in discovery while the parties fight about whether documents can or cannot be shared with other lawyers who may seek to bring other cases in the future do not further the objective of getting this case ready for trial. It may actually cause delay in the production of documents as Defendants act more deliberately in deciding whether to produce or object to discovery, concerned that any material produced in discovery will be shared widely among the Plaintiffs' Bar across the country for no verifiable legitimate purpose.

2019 WL 2357306 at *2.

witnesses but not filed with the court, so-called 'raw discovery.'"); *Strough*, 2019 WL 2357306 at *2 (court rejected plaintiff's reliance on *Parsons* for the proposition that "[c]ourts have long rejected blanket secrecy orders based on GM's claim that it needs to be protected from competitors," stating *Parsons* was outdated and plaintiff mistaken because the strong presumption of public access applies to materials filed in the record and used in public proceedings, but materials produced to an adverse party via the discovery process are treated differently). Plaintiffs make no specific argument as to why discovery materials produced by Defendant must be openly shared to protect the safety of the public, and Defendant's proposed order contains a provision allowing the parties to report any alleged safety defect or concerns to the National Highway Traffic Safety Administration ("NHTSA"). (Doc. 32-4 at 10).[4] Nor is it necessary to publicly reveal Defendant's confidential business and engineering information in order for Plaintiffs to prove their claims. Indeed, Plaintiffs make no argument that entry of a protective order would impair their ability to litigate this action. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir. 1992) (court found plaintiff "failed to demonstrate how the protective order actually could have or did prejudice its case"). Accordingly, the undersigned finds that the balance between public and private interests weighs in favor of granting Defendant's motion.

---

[4] In *Strough*, 2019 WL 2357306 at *4, the court rejected plaintiff's argument that a sharing provision was necessary to protect the safety of the public because the protective order already contained a specific provision allowing plaintiff's counsel to share any "smoking gun" document with NHTSA. The court further rejected plaintiff's "pro-active effort . . . to get advance permission to share confidential documents with unknown lawyers in yet-to-be filed cases[,]" reasoning that:

> Plaintiff apparently wants to provide these documents to any future lawyer in any future case that might be filed against GM or TRW. It is not clear why Plaintiff is fighting hypothetical future discovery battles for hypothetical future plaintiffs. Plaintiff has provided no evidence of the number of rollover accident deaths involving Chevy Impalas allegedly caused by the lack of ESC, allegedly defective seatbelts, or inadequately designed windows. There is no evidence before the Court that there are a multitude of similar cases across the country involving the same technology or design. And, if there were, the plaintiffs in those cases could come to this Court and seek access to the discovery documents and the Court would assess their bona fides at that time.

*Id.*

Plaintiffs' final argument focuses on the provision in Defendant's proposed protective order requiring that a party seeking to file any documents designated as confidential in the record seek to do so under seal. Plaintiffs contend that this provision circumvents the normal procedures and contravenes the presumption of public access to judicial records.

There is a "strong presumption of access to judicial records[, which] applies fully to dispositive pleadings . . . and related attachments." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). Therefore, once documents become part of the judicial record, a party seeking to seal such documents must articulate compelling reasons supported by specific factual findings to outweigh the public policies favoring disclosure. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010); *Kamakana*, 447 F.3d at 1178–79. However, the federal common law right of access does not apply to materials filed under seal pursuant to a valid protective order. *Phillips*, 307 F.3d at 1213. As the Ninth Circuit has explained,

> When a court grants a protective order for information produced during discovery, it already has determined that "good cause" exists to protect this information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality. Applying a strong presumption of access to documents a court has already decided should be shielded from the public would surely undermine, and possibly eviscerate, the broad power of the district court to fashion protective orders.

*Id.* Thus, when the court has already issued a protective order covering discovery materials and a party seeks to file those materials under seal, the court must make an appropriate inquiry: When a party seeks to seal confidential information attached to a discovery motion unrelated to the merits of a case, the lower burden of Rule 26(c)'s good cause standard applies because in such a situation, "the private interests of litigants are 'the only weights on the scale.'" *Ctr. for Auto Safety*, 809 F.3d at 1097 (citation omitted); *see also Pintos*, 605 F.3d at 678 (explaining that the "good cause" required for seeking a protective order is a lower burden than the "compelling reasons" standard for sealing a judicial record because "[t]he cognizable public interest in judicial records that underlies the 'compelling

reasons' standard does not exist for documents produced between private litigants"). However, where a party wishes to seal documents attached to a dispositive motion that is directly relevant to the merits of a case—one that "involves important issues and information to which our case law demands the public should have access"—the compelling reasons standard applies. *Ctr. for Auto Safety*, 809 F.3d at 1098; *see Kamakana*, 447 F.3d at 1179 ("the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the public's understanding of the judicial process and of significant public events" (internal quotations and citation omitted)).[5]

This Court's Local Rules set forth the procedures for sealing court records in unsealed civil actions. Local Rule of Civil Procedure 5.6(b) states that "[a]ny motion or stipulation to file a document under seal must set forth a clear statement of the facts and legal authority justifying the filing of the document under seal . . . " and thus requires that the moving party make the required showing—whether good cause or compelling reasons supported by specific factual findings—to seal the document. Rule 5.6(d) sets forth additional requirements for a party seeking to file a document designated confidential by another party pursuant to a protective order or confidentiality agreement: First, the submitting party must confer with the designating party about the need to file the document under seal and whether the parties can agree to a stipulation. If the parties are unable to agree, the rule then sets forth additional procedures for lodging the proposed document under seal, a response by the designating party, and the Court's ruling. LRCiv 5.6(d), (e).

The provision in Defendant's proposed protective order states that it applies to the extent that it does not conflict with this Court's Orders or Local Rules and directs the parties to file a motion to file under seal pursuant to the procedures set forth in LRCiv 5.6:

> **Filing of Confidential Material or Highly Confidential Material:** The following procedures apply provided they do not conflict with applicable rules and orders of the Court. If Confidential or Highly Confidential Material is contained in documents that a party seeks to file with the Court, that party

---

[5] The Ninth Circuit has stressed that the terms "dispositive" and "nondispositive" are not meant to be applied mechanically; rather, the distinction is whether the motion at issue goes "to the heart of the case" or is unrelated, or only tangentially related, to the underlying cause of action. *Ctr. for Auto Safety*, 809 F.3d at 1098–99.

1
2
3

> shall file a motion to file under seal, pursuant to LRCiv 5.6, the relevant excerpts constituting Confidential or Highly Confidential Material within such documents, which shall be appended to the motion and lodged with the Court separately . . . .

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

(Doc. 32-4 at 7). Thus, by its plain terms, Defendant's proposed protective order does not conflict with this Court's Local Rules or the applicable case law. Rather, LRCiv 5.6(d) specifically requires that when a party wishes to file a document that has been designated confidential (or wishes to refer in a memorandum or other filing to information designated confidential), the submitting party must first confer and attempt to come to an agreement with the designating party, and if unable to do so, then lodge the document or proposed filing under seal and the Court will determine the matter. Defendant's proposed order does not circumvent these requirements; indeed, it explicitly states that it does not and incorporates this Court's procedures for filing a motion to file documents under seal. To the extent that there is any confusion as to whether Defendant's proposed order eliminates Rule 5.6(d)'s requirement that the parties first confer and attempt to agree to a stipulation, the Court makes clear that all of Rule 5.6's provisions remain in effect and govern the litigation in this action. The Court further clarifies that Defendant's proposed protective order does not guarantee that a confidential document will be filed under seal. Such a determination would be premature without the Court first considering whether good cause or compelling reasons justify sealing the records, or without considering other alternatives, such as redaction of the documents. *See* LRCiv 5.6(b); *Kamakana*, 447 F.3d at 1179; *see also Trew*, 2006 WL 8458828 at *2 ("Consideration must also be given to the impact a sealing order would have on the clerk of court, law clerks, and judges assigned to this case, both to observe the order and to specially handle sealed documents.").

25
26
27
28

In sum, the Court finds that Defendant's proposed protective order "is narrowly tailored to protect [GM's] confidential information, facilitates access to materials relevant and necessary to prosecute and defend the case, and [is appropriate] because [GM's] interest[] in preserving [its] confidential information outweighs the public's interest in unfettered access to such information." *Armored Republic LLC v. Diamond Age Corp.*,

2021 WL 347759, at *2 (D. Ariz. Feb. 2, 2021); *see also F.D.I.C. v. Brudnicki*, 291 F.R.D. 669, 673 (N.D. Fla. 2013) (where voluminous documentary information was at issue, court found entry of protective order was necessary and appropriate "to facilitate the expeditious production of documents and to avoid unnecessary expense and time, which the FDIC-R would incur if it was required to review each document line-by-line to identify and redact sensitive information"); Fed. R. Civ. P. 1 (the federal rules shall be employed "to secure the just, speedy, and inexpensive determination of every action and proceeding"). Further, the entry of the protective order will not result in wholesale sealing of documents in this case, nor does the order constitute a blanket finding by the Court of privilege or confidentiality. Rather, that determination, if necessary, will be reserved for the Court to address in the event a motion to seal is filed. The protective order addresses the procedures for filing documents under seal consistent with Ninth Circuit precedent and this Court's Local Rules and is consistent with the principle that wholesale sealing of documents is disfavored by the courts. *See, e.g.*, *San Jose Mercury News*, 187 F.3d at 1102; *Foltz*, 331 F.3d at 1135; *Kamakana*, 447 F.3d at 1183–85; *see also Nault's Auto. Sales*, 148 F.R.D. at 44–45.

**III. Conclusion**

Accordingly, based on the foregoing, **IT IS HEREBY ORDERED** granting Defendant's Motion for Protective Order. (Doc. 32).

Dated this 18th day of August, 2022.

Eric J. Markovich
United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Gann, et al., | No. CV-22-00080-TUC-RM (EJM) |
| Plaintiffs, | **PROTECTIVE ORDER** |
| v. | |
| General Motors LLC, | |
| Defendant. | |

## PROTECTIVE ORDER

1.     Applicability of Order: This Order will be applicable to and govern the handling of documents, depositions, deposition exhibits, deposition videos, interrogatory responses, responses to subpoenas, responses to requests for admissions, responses to requests for production of documents, and all other discovery obtained pursuant to the Federal Rules of Civil Procedure by or from, or produced on behalf of a party in connection with the Litigation (this information hereinafter referred to as "Discovery Material").  As used herein, "Producing Party" or "Disclosing Party" shall refer to the parties in this Litigation that give testimony or produce documents or other information, non-parties for purposes of Section 10, and "Designating Party" shall refer to parties whose Confidential and Highly Confidential information is disclosed in documents produced by other parties or third parties, in which case the affected party may designate such information as Confidential or Highly Confidential under this Order.  "Receiving Party" shall refer to the parties in this Litigation that receive such information.

"Authorized Recipient" shall refer to any person or entity authorized by Sections 11 and 12 of this Order to obtain access to Confidential Material, Highly Confidential Material, or the contents of such Material.

2.      Designation of Material: Any party may designate Discovery Material that is in its possession, custody, or control to be produced to a Receiving Party, or Discovery Material that is produced by another party (including a third party) but qualifies for protection under this Order, as "Confidential" or "Highly Confidential" under the terms of this Order if the party in good faith reasonably believes that such Discovery Material contains non-public, confidential material as defined in Sections 3 and 4 below (hereinafter "Confidential Material" or "Highly Confidential Material").

3.      Confidential Material: For purposes of this Order, Confidential Material is any information that a party believes in good faith to be confidential or sensitive information, including, but not limited to, trade secrets, research, design, development, financial, technical, marketing, planning, private or confidential personal information, customer information, or commercial information.

4.      Highly Confidential Material: For purposes of this Order, Highly Confidential Material is any Protected Data (defined below) and/or Confidential Material as defined in Section 3 which also includes non-public and extremely sensitive, highly confidential, non-public information, consisting either of trade secrets or proprietary or other highly confidential business, financial, regulatory, or strategic information (including information regarding business plans, technical data, and non-public designs), the disclosure of which would create a substantial risk of competitive or business injury to the Producing or Designating Party.  Certain Protected Data may compel alternative or additional protections beyond those afforded Highly Confidential Material, in which event the parties shall meet and confer in good faith, and, if unsuccessful, shall move the Court for appropriate relief.

5.      Protected Data: Protected Data shall refer to any information that a party believes in good faith to be subject to federal, state, or foreign Data Protection Laws or other

privacy obligations. Protected Data constitutes highly sensitive materials requiring special protection.  Designating material as Protected Data does not preclude the parties from designating that same material, as appropriate, for Confidentiality and Privilege.

6.    Designating Confidential Material, Highly Confidential Material, or Protected Data:   The designation of Discovery Material as Confidential Material, Highly Confidential Material, or Protected Data for purposes of this Order shall be made in the following manner:

6.1    The parties shall label each page of a designated document as "Confidential" or "Highly Confidential" if feasible to do so.  However, failure to do so shall not be considered a waiver of such designation and shall not deem such information to not qualify as "Confidential" or "Highly Confidential."  A party who disagrees with another party's designation must nevertheless abide by that designation until the matter is resolved by written agreement of the parties or by order of the Court.  The parties further agree to abide by the Producing Party's designation upon notice, written or otherwise, that a party will seek appeal or other form of judicial review of an order of the Court.

6.2    Deposition Transcripts.   Within thirty (30) days after receipt of the final transcript of the deposition of any party or witness in this case, a party or the witness may designate the transcript or sections thereof as "Confidential" or "Highly Confidential."  If a designated transcript or transcript portion is filed with the Court, the designating party shall file a motion to file under seal.  Unless otherwise agreed, all deposition transcripts shall be treated as "Confidential" until the expiration of the thirty-day period.

7.    Inadvertent/Unintended Disclosure: The inadvertent and/or unintentional failure to designate Discovery Material as Confidential or Highly Confidential does not constitute a waiver of such claim and may be remedied by prompt supplemental written notice upon discovery of any such disclosure (inadvertent or otherwise), with the effect that such Discovery Material will be subject to the protections of this Order.

- 3 -

8.      Copies: The Receiving Party may make copies of Discovery Material, but such copies shall become Confidential Material or Highly Confidential Material to the same extent, and subject to the same protections, as the Discovery Material from which those copies were made.  The Receiving Party shall exercise good faith efforts to ensure that copies it makes of Discovery Material produced to it, and copies made by others who obtained such Discovery Material directly or indirectly from the Receiving Party, include the appropriate confidentiality legend, to the same extent that the Discovery Material has been marked with the appropriate confidentiality legend by the Producing or Designating Party.  In the event that the Receiving Party receives notice in accordance with Section 7 of this Order that Discovery Material was inadvertently or unintentionally disclosed without being designated as Confidential or Highly Confidential Material, the Receiving Party shall exercise good-faith efforts to notify the Producing Party, ensure that copies it makes of Discovery Material produced to it, and copies made by others who obtained such Discovery Material directly or indirectly from the Receiving Party, are marked with the appropriate confidentiality legend, are made available in whole or in part only to persons authorized to receive Confidential or Highly Confidential Material (as the case may be), and are at all times handled and used only in the manner that this Order permits or requires Confidential or Highly Confidential Material (as the case may be) to be handled and used.

9.      Derivative Works: Any notes, lists, memoranda, indices, compilations prepared or based on an examination of Confidential Material or Highly Confidential Material, or any other form of information (including electronic forms), that quote from, paraphrase, copy, or disclose Confidential Material or Highly Confidential Material with such specificity that the Confidential Material or Highly Confidential Material can be identified, or by reasonable logical extension can be identified, shall be accorded the same status of confidentiality as the underlying Confidential Material or Highly Confidential Material from which they are made and shall be subject to all of the terms of this Order.

10.     Notice to Non-Parties:  Any party issuing a subpoena to a non-party shall enclose

a copy of this Order with a request that the non-party either request the protection of this Order or notify the issuing party that the non-party does not need the protection of this Order or wishes to seek different protection.

11.    Persons Authorized to Receive Confidential Material:   Access to Confidential Material shall be restricted, and may only be disclosed, summarized, described, characterized, or otherwise communicated or made available in whole or in part, solely to the following persons, who agree to be bound by the terms of this Order, unless additional persons are stipulated by counsel or authorized by the Court:

11.1   Outside counsel of record for the parties, and the administrative staff of outside counsel's firms,

11.2   In-house counsel for the parties, and the administrative staff for each in-house counsel;

11.3   Any party in this Litigation who is an individual, and every employee, director, officer, or manager of any party to this action who is not an individual, but only to the extent necessary to further the interest of the parties in this Litigation.

11.4   Independent consultants or expert witnesses (including partners, associates and employees of the firm which employs such consultant or expert) retained by a party or its attorneys for purposes of this Litigation, but only to the extent necessary to further the interest of the parties in this Litigation, and only after executing the agreement attached hereto as Exhibit A.

11.5   The   Court   and   its   personnel,   including,   but   not   limited   to, transcription/recording services engaged by the Court or the parties during this Litigation.

11.6   The authors or recipients of a document containing the Confidential Material or a custodian or other person who otherwise know the information sought to be protected;

11.7   In connection with their depositions, non-party witnesses in this Litigation

to whom disclosure is reasonably necessary and who have signed the agreement attached hereto as Exhibit A;

11.8    Any mediator(s) or settlement officer(s) mutually agreed upon by the parties;

11.9    Mock trial/focus group participants provided they have signed the agreement attached hereto as Exhibit A;

11.10 Employees of discovery or copy services, microfilming or database services, trial support firms and/or translators or other litigation support vendors who are engaged by the parties during this Litigation, but only after such service or support firm executes the agreement attached hereto as Exhibit A.

12.    Persons Authorized to Receive Highly Confidential Material: Access to or use of any information, documents, or portions of documents marked "Highly Confidential" shall be restricted and may only be disclosed, summarized, described, characterized, or otherwise communicated or made available in whole or in part solely to the persons listed in paragraphs 11.1, 11.2, 11.3 (to the extent the party is not a current employee of a direct competitor of any party named in the Litigation), 11.4, 11.5, 11.6, 11.7, 11.8, 11.9 and 11.10 unless additional persons are stipulated by counsel or authorized by the Court.

13.    Agreement to Be Bound:  All persons described in paragraphs 11.4, 11.7, 11.8, 11.9 and 11.10 shall not have access to the Confidential Documents without having first read, acknowledged, and agreed to be bound by this Order by executing the attached Exhibit A.  Each party's counsel shall retain each such executed "Exhibit A" and shall keep a list identifying (a) all persons to whom Confidential Documents have been disclosed and (b) all Confidential Documents disclosed to such persons.  Each executed "Exhibit A" shall not be made available to the Designating Party during the pendency of the litigation but shall be available for an in-camera inspection by the Court if good cause for review is demonstrated by the Designating Party.  During the pendency of the litigation or after the termination of the litigation, subject to the attorney work product doctrine/attorney-client privilege and for good cause shown, the Court may order any

party to provide to the Designating Party the list referenced above and any executed "Exhibit A". However, each such executed "Exhibit A" and list shall be submitted to counsel for the Designating Party at the conclusion of the Litigation.

14.    Qualification of Outside Experts and Consultants: Neither Confidential nor Highly Confidential Material shall be disclosed to any retained and/or testifying experts or consultants who are current employees of a direct competitor of any party named in the Litigation.

15.    Use of Discovery Material: Discovery Material containing Confidential and/or Highly Confidential Material shall be used solely for purposes of the Litigation, including any appeal and retrial. Disclosure or dissemination outside of this Litigation and/or contrary to the terms of this Order is strictly prohibited.

16.    Exclusion of Individuals from Depositions: Whenever Protected Material is to be disclosed in a deposition, the designating party may exclude from the room any person, other than persons described in paragraphs 11 and 12, as appropriate, for that portion of the deposition. If Protected Material is to be disclosed in a judicial proceeding, the parties will endeavor to meet and confer in good faith and in advance about steps that can be taken, if any, to limit the disclosure of Protected Material.

17.    Storage of Confidential Material or Highly Confidential Material: The recipient of any Confidential Material or Highly Confidential Material that is provided under this Order shall maintain such information in a reasonably secure and safe manner including reasonable administrative, technical, and physical safeguards designed to protect the security and confidentiality of such Confidential Material or Highly Confidential Material, protect against any reasonably anticipated threats or hazards to the security of such Confidential Material or Highly Confidential Material, and protect against unauthorized access to Confidential Material or Highly Confidential Material, shall ensure that access is limited to the persons authorized under this Order, and shall further exercise the same standard of due and proper care with respect to the storage, custody, use, and/or dissemination of such information as is exercised by the recipient with respect

to its own proprietary information.

18.     Filing of Confidential Material or Highly Confidential Material: The following procedures apply provided they do not conflict with applicable rules and orders of the Court.  If Confidential of Highly Confidential Material is contained in documents that a party seeks to file with the Court, that party shall file a motion to file under seal, pursuant to LRCiv 5.6, the relevant excerpts constituting Confidential or Highly Confidential Material within such documents, which shall be appended to the motion and lodged with the Court separately and marked as follows or in substantially similar form:

18.1    CONFIDENTIAL

IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS CONFIDENTIAL AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN SECTION 11 OF THE PROTECTIVE ORDER.

or

18.2    HIGHLY CONFIDENTIAL

IN ACCORDANCE WITH A PROTECTIVE ORDER, THE ENCLOSURE(S) SHALL BE TREATED AS HIGHLY CONFIDENTIAL AND SHALL NOT BE SHOWN TO ANY PERSON OTHER THAN THOSE PERSONS DESIGNATED IN SECTION 12 OF THE PROTECTIVE ORDER.

19.     Challenging Designation of Materials: A party shall not be obligated to challenge the propriety of a Confidential Material or Highly Confidential Material designation at the time made, and failure to do so shall not preclude a subsequent challenge thereto during the pendency of this Litigation.

19.1    Challenge: If a Receiving Party disagrees with the propriety of the Producing or Designating Party's designation of any document(s) or other discovery materials under this Order, counsel for the Receiving Party shall serve written notice upon the Producing or Designating Party's counsel, specifying the document(s) in question by bates number or other specific identifier.

19.2    Meet and Confer and Motion: Upon receipt of written notice challenging the designation of any Confidential Material, the parties shall meet and confer within 15 days to attempt to reach an agreement on the designation of the particular document(s) in question.  The Producing or Designating Party related to the challenge shall initiate the meet and confer referenced in the last sentence above.  If an agreement cannot be reached between the parties concerning the propriety of the designation, the Producing or Designating Party shall file a motion seeking Court adjudication of the propriety of the designation under applicable court rules or statutes.  Such a motion shall be filed seeking Court adjudication of the propriety of the designation within 21 days after the parties' meet and confer regarding the designation of any challenged Protected Document(s).

19.3    Status of Challenged Designation Pending Judicial Determination: Any such document(s) shall at all times continue to be treated as designated by the designating party subject to this Order until such motion has been decided or the motion described in paragraph 19.2 above is not timely filed.

20.    Court Requirements Still in Effect: Nothing contained herein is intended to bypass or alter or modify any Court-imposed procedural requirements for addressing discovery or disputes arising from discovery.  If the Court or a particular judge has requirements, those requirements are to be met before filing any motion with the Court.  If the Court or a particular judge has no such requirements, the procedure outlined in this Protective Order governs.

21.    No Waiver of Privilege:  The production of privileged or work-product protected documents, electronically stored information ("ESI"), or any other information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this Litigation or in any other federal or state proceeding.

22.    Effect of Disclosure of Privileged Information: The Receiving Party hereby agrees to return, sequester, or destroy any Privileged Information disclosed or produced by the Designating or Producing Party upon request.  If the Receiving Party reasonably believes

that Privileged Information has been inadvertently disclosed or produced to it, it shall promptly notify the Designating or Producing Party and sequester such information until instructions as to disposition are received.  The failure of any party to provide notice or instructions under this Paragraph shall not constitute a waiver of, or estoppel as to, any claim of attorney-client privilege, attorney work product, or other ground for withholding production as to which the party would be entitled in the Litigation or any other federal or state proceeding.

23.     Order Remains in Force: This Order shall remain in force and effect until modified, superseded, or terminated by consent of the parties or by order of the Court made upon reasonable written notice.  Unless otherwise ordered, or agreed upon by the parties, this Order shall survive the termination of this Litigation.  The Court retains jurisdiction even after termination of this Litigation to enforce this Order and to make such amendments, modifications, deletions, and additions to this Order as the Court may from time to time deem appropriate.

24.     No Waiver of Grounds for Producing Material:  This Order shall not be construed to limit a party's right or require a party to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

25.     Use in Litigation.  Counsel shall confer on such procedures that are necessary to protect the confidentiality of any documents, information, and transcripts used in the course of any court proceedings, including petitioning the Court to close the courtroom.

26.     Redaction Allowed:  Any Producing or Designating Party may redact from the documents and materials it produces information that the Producing or Designating Party claims is subject to attorney-client privilege, work product immunity, a legal prohibition against disclosure, or any other privilege or immunity.  The Producing or Designating Party shall mark each area where information has been redacted with a legend stating "REDACTED," and specify the basis for the redaction (e.g., privilege, etc.), as appropriate, or a comparable notice.  Where a document consists of more than one page,

at least each page on which information has been redacted shall be so marked. The Producing or Designating Party shall preserve an unredacted version of each such document. In addition to the foregoing, the following shall apply to redactions of Protected Data:

      26.1   Any party may redact Protected Data as defined in Section 5 that it claims, in good faith, requires protection under the terms of this Order.

      26.2   Protected Data shall be redacted from any public filing not filed under seal.

27.   End-of-Matter Data Disposition: Upon final resolution of this Litigation the Parties will certify that a good-faith effort has been made that all Confidential Material and/or Highly Confidential Material has been returned to the Producing or Designating Party or destroyed.

28.   This Order does not preclude a party or its counsel from reporting any alleged safety defect or concerns to the National Highway Traffic Safety Administration ("NHTSA") or any governmental agency with the authority to study public safety issues pertinent to the product at issue. However, a party may not share a Producing Party's Confidential or Highly Confidential documents or other discovery materials with NHTSA or any governmental agency without prior consent of the Producing Party, except as required to comply with a court order. Any request for disclosure of a Producing Party's Confidential or Highly Confidential documents or other discovery materials should be directed to the Producing Party. The terms of this Protective Order do not preclude GM LLC from providing confidential and/or protected information and documents to NHTSA, either voluntarily or in connection with GM LLC's obligations under the National Traffic and Motor Vehicle Safety Act of 1966 ("Safety Act"), 49 U.S.C. § 30101, et. seq.

29.   Violations of this Order: If any person or party should violate the terms of this Order, the aggrieved Producing or Designating Party may apply to the Court to obtain relief against any such person or party violating or threatening to violate any of the terms of this Order. If the aggrieved Producing or Designating Party seeks injunctive relief, it

must petition the Court for such relief, which may be granted at the sole discretion of the Court.  The parties and any other person subject to the terms of this Order agree that this Court shall retain jurisdiction over it and them for the purpose of enforcing this Order.

**IT IS SO ORDERED.**

Dated this 18th day of August, 2022.

Eric J. Markovich
United States Magistrate Judge

## **ACKNOWLEDGEMENT OF PROTECTIVE ORDER**

I, _____, hereby acknowledge that I have received a copy of the Stipulated Protective Order entered in the above-captioned action by the U.S. District Court for the District of Arizona (hereinafter the "Protective Order").

I have either read the Protective Order or have had the terms of the Protective Order explained to me by my attorney.

I understand the terms of the Protective Order and agree to comply with and to be bound by such terms.

If I receive documents or information designated as Confidential Material or Highly Confidential Material (as those terms are defined in the Protective Order), I understand that such information is provided to me pursuant to the terms and restrictions of the Protective Order.

I agree to hold in confidence and not further disclose or use for any purpose (other than is permitted by the Protective Order) any information disclosed to me pursuant to the terms of the Protective Order.  I agree to maintain and abide by the End-of-Matter Data Disposition provision set forth in the Protective Order.

I hereby submit myself to the jurisdiction of the U.S. District Court for the District of Arizona for resolution of any matters pertaining to the Protective Order.

My address is _____

My present employer is _____

Dated: _____

Signed: _____

- 13 -